**CITY OF ROMA, Texas, et al., Appellants,**

v.

**F. C. GONZALEZ et al., Appellees.**

**No. 14435.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 24, 1965.

Rehearing Denied Dec. 29, 1965.

**944**

Hill, King & McKeithan, Mission, for appellants.

Glenn H. Ramey, Rio Grande City, for appellees.

PER CURIAM.

This is an election contest consolidated with a validation bond suit. On January 4, 1964, the City of Roma, located in Starr County, Texas, by a vote of 236 for and 141 against, approved revenue bonds in the sum of $150,000.00, for the improvement and expansion of the water system, and by a vote of 242 for and 140 against, approved revenue bonds in the sum of $115,000.00, for the improvement and expansion of the gas system. Appellees F. C. Gonzalez and R. R. Guerra, describing themselves as "resident property owning citizens of the City of Roma, Starr County, Texas, and duly qualified electors in all elections of said city," brought this election contest.

The trial court, after hearing evidence, held the election void, and for this reason refused to validate the bonds. The City of Roma, acting through its Mayor, J. C. Guerra, and its commissioners have prosecuted this appeal.

Appellants' first contention is that appellees do not have such justiciable interest in the bond validation suit as to be proper parties to that suit. It is clear that under the provisions of Article 9.30 of the Texas Election Code they were proper parties to maintain the election contest, and under this record we do not find it necessary to decide whether they were proper parties to the validation suit.

The trial court filed findings of fact and conclusions of law. They were not filed within the time required by Rule 297, T.R.C.P., but inasmuch as there is no motion to strike them, they will be considered by us.

The trial court's finding of fact No. 1 is to the effect that the stub box used at the election had an opening in its top six inches long and five/eighths of an inch wide, when it should have been only

one/sixteenth of an inch wide and two and one/fourth inches long as is provided by Article 8.15 of the Election Code V.A.T.S. The trial court concluded that this provision of the election law is mandatory, and that its violation by the election official rendered the election void. We do not agree. The general rule is that the performance of duties placed upon the election officials are directory, unless made mandatory by statute, while those placed upon the voters are mandatory. Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817; McCrary on Elections (4th Ed.) § 724. Here it was clearly the duty of the city officials to furnish a stub box with an opening in its top of ⅟₁₆th of an inch wide and 2¼ inches long, Art. 7.13, but the violation of this directory duty by city officials, being something beyond the control of the voter, should not invalidate his vote. The voter had no choice but to place his stub in the only stub box furnished him.

In Minthorn v. Hale, Tex.Civ.App., 372 S.W.2d 752, an election contest very similar to the one we have here, the Court said:

"It has been said many times by our courts that the object of every popular election is to ascertain the will of the qualified electors in the area to be affected thereby upon the issue or issues submitted to them.

"Our courts have also said, a number of times, that statutory enactments concerning elections must be strictly enforced to prevent fraud, but liberally construed in order to ascertain and effectuate the will of the voters. Turner v. Teller, Tex.Civ.App., 275 S.W. 115.

"The rule is that statutes regulating the manner of holding an election are merely directory, and a departure from their provisions will not, ordinarily, invalidate an election, unless such departure, or such irregularity have affected or changed the result of the elec-

tion. Hill v. Smithville Independent School District, Tex.Comm.App., 251 S.W. 209.

"There is no evidence in this case that fraud, or misconduct or the irregularity complained of affected the result of the election."

The size of the opening in the stub box should not render an election void if it is otherwise valid.

The trial court's finding No. 2, is as follows:

"2. The Notices of Election given in connection with said election were misleading and incomplete in that though said Notices stated the said revenue bonds were for the purpose of improving and extending said City's Waterworks System and Gas System said Notices did not state that said Systems were to be extended beyond the city limits of the City of Roma to supply water and gas to non-residents of the City of Roma and the Court finds it was the principal purpose of said proposed bond issue to extend water lines and gas lines of the City of Roma to communities lying from four to six miles outside the City Limits of the City of Roma."

The purposes stated in the notices were legal purposes and were sufficient. The fact that the Mayor and Commissioners of the City of Roma may have had in mind the spending of the money derived from the bonds for a purpose that might be unlawful, did not render the election void. Nalle v. City of Austin, 85 Tex. 520, 22 S.W. 668; Texsan Service Co. v. City of Nixon, Tex. Civ.App., 158 S.W.2d 88.

In Roberts v. Hall, Tex.Civ.App., 167 S.W.2d 621, the Court said:

"It is the law that questions submitted to the voters for determination must be ascertained from the official orders and notices and not from such promises,

either oral or written, as are here alleged and relied on."

The trial court's findings Nos. 3 to 5 are as follows:

"3. The election judges, clerks and supervisors and other election officials were all members and supporters of a political party operating in the City of Roma and throughout Starr County known as the 'Old Party' and there is another political party operating in the City of Roma and throughout Starr County known as the 'New Party' which is opposed to and in vigorous contention with the said 'Old Party', and two said political parties have vigorously opposed each other for many years, and that the members of the City Commission of the City of Roma are all supporters of and adherents to the said 'Old Party' in particular Mayor J. C. Guerra who is the leader of the said 'Old Party', and said City Commission and Mayor J. C. Guerra know and are well acquainted with their political opponents in said 'New Party' and it was entirely practicable for said City Commission and Mayor J. C. Guerra to appoint members and supporters of the 'New Party' as watchers and supervisors at said election but failed and refused to do so although said Mayor J. C. Guerra orally agreed two days before said election to appoint watchers or supervisors representing Contestants in this Election Contest at said election. (No effort was made by appellees to comply with the provisions of Art. 3.06, relating to the appointment of election supervisors.)

"4. A full and complete poll list showing the names of all persons who voted in and cast ballots in said election was not put in the election boxes with other election materials, the first two pages of said poll list containing a total of 199 names was put in the election boxes but there were a total of 383 ballots counted in said election and there were therefore 183 names of alleged voters which were not on the poll list deposited in the election boxes.

"5. The box used in said election as a stub box was sealed by the Deputy District Clerk of Starr County before said election so that said box could not be opened without parting said seal but that when said box was returned to the District Clerk's office on the night of January 4, 1964 by the election officials under an impoundment by this Court said seal had been parted and pasted back in a different manner than said Deputy District Clerk had originally pasted it when she sealed said box and said seal was so placed that it was no longer necessary to part the seal in order to open the box, I therefore find that between the time the said Deputy District Clerk sealed said box before the election and the time it was returned to the District Clerk's office following the election some person or persons unknown had parted said Clerk's seal, opened said box and pasted said seal back together."

■ There is no pleading or evidence of any fraud affecting the result of the election. All of the findings relate to violations of duties performed by the election officials, none of them relate to matters within the control of the voters, and are directory only, and their violation under all of the facts here are insufficient to render the election void. Davis v. Walcott, 96 S.W.2d 817.

The sixth finding of fact by the trial court is similar to finding No. 2, and is governed by what is said above in reference to that finding.

Findings Nos. 7 and 8 are as follows:

"7. The tax levied by the City of Roma in January, 1963 was the first tax levied by the City of Roma, that the City of Roma had no tax roll at the time of this election on January 4, 1964 but had only a tax receipt book which the

Tax Assessor-Collector of the City of Roma did not prepare and did not supervise its preparation and had no connection of any kind with its preparation, and that said tax receipt book was not completed until November, 1963 and said tax receipt book was used by election officials to determine eligibility of voters in said election as to their qualification of having their name on the tax rolls of the City.

"8. The Tax Assessor-Collector of the City of Roma did not supply to the election officers a poll list showing the names of qualified voters in and for said election."

The situation as stated in these two findings is similar to the facts in Hanson v. Jordan, 145 Tex. 320, 198 S.W.2d 262. Justice Brewster, speaking for the Supreme Court, after stating that the purpose of Art. VI, Sec. 3a, Constitution of the State of Texas, limiting voters at a bond election to voters who had duly rendered their property for taxes, was to induce owners of property to place it upon the tax rolls and become liable for its pro rata share of the taxes levied and assessed by the municipality, declared the law to be as follows: "We cannot see how this purpose of the people in adopting the amendment under consideration was in any manner violated in the bond election held by the City of Cleveland. The certificate says there was no fraud; that 'the voters at such election were otherwise qualified.' In other words, each voter at the election was a property owner, and the only reason he had not rendered his property for taxes was the very sufficient one that there were no taxes to pay. To hold that a voter in that situation could not legally cast his ballot would be but to punish a citizen who has been guilty of no dereliction or omission whatever. It would amount to a disfranchisement of the entire property-owning citizenship of Cleveland because for a decade that city very commendably levied no taxes when no taxes were necessary. It would mean that Cleveland cannot now pave its streets or make sewer improvements only because it has practiced frugality for ten years. We do not believe the voters of this state had any such intendment when they adopted Art. VI, Sec. 3a, supra. To hold the election in this case invalid, under the facts stated, would accomplish no good; it would remedy no evil."

■ Inasmuch as the City of Roma did not have an assessment roll, a copy of same could not be furnished by the tax assessor, and the election judges correctly allowed the voters to vote, who were otherwise qualified, even though they had not duly rendered their property for taxation purposes.

Art. 9.15, Texas Election Code, provides as follows:

"If it appears on the trial of any contest provided for in Section 134 (art. 9.06) that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach or from the returns considered in connection with other evidence, or should it appear from the evidence that such a number of legal voters were, by the officers or managers of the election, denied the privilege of voting as, had they been allowed to vote, would have materially changed the result, the court shall adjudge such election void, and direct the proper officers to order another election to fill said office; which election shall be ordered and held and returns thereof made in all respects as required by the general election laws of the State."

■ In Stafford v. Stegle, Tex.Civ.App., 271 S.W.2d 833, this Court said:

"While those charged with conducting elections should use every precaution possible to see that elections are conducted strictly in accordance with the provisions of the Election Code, nevertheless, after an election has been

held and it appears that it has been fairly conducted and the result correctly declared, and there were no charges of fraud, misconduct or illegality, the entire election will not be set aside for irregularities in the manner of conducting the election, unless the statutes governing such matters state that the election must be vitiated. It appears here that the result would have been exactly the same even if the irregularities complained of by appellants had not occurred. There was no evidence which indicates anything to the contrary."

The above statement applies here.

The judgment of the trial court is reversed and judgment here rendered declaring the election valid and the bonds validated.

Reversed and rendered.